IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )   Case No. 3:18-cr-00161-IM
                                   )
     v.                            )
                                   )
NATHAN WHEELER,                    )   May 24, 2018
                                   )
          Defendant.               )   Portland, Oregon
_____    )

**Change of Plea Hearing**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ANNA J. BROWN

UNITED STATES DISTRICT COURT SENIOR JUDGE

APPEARANCES


FOR THE PLAINTIFF:        Ms. Michelle H. Kerin
                          United States Attorney's Office
                          1000 S.W. Third Avenue, Suite 600
                          Portland, OR 97204


FOR THE DEFENDANT:        Mr. David T. McDonald
                          David T. McDonald, P.C.
                          833 S.W. 11th Avenue, Suite 625
                          Portland, OR 97205


U.S. PRETRIAL
SERVICES:                 Mr. Michael McFarland


COURT REPORTER:           Bonita J. Shumway, CSR, RMR, CRR
                          United States District Courthouse
                          1000 S.W. Third Ave., Room 301
                          Portland, OR  97204
                          (503) 326-8188

(P R O C E E D I N G S)

(May 24, 2018; 10:17 a.m.)

THE COURT:  Good morning, everyone.  Please be seated.

Ms. Kerin.

MS. KERIN:  Good morning, Your Honor.  We are here on the United States versus Nathan Wheeler.  It's Case No. 18-cr-161.  Mr. Wheeler is present in the courtroom, Your Honor.  He's represented this morning by David McDonald.  Michelle Kerin for the government.

Your Honor, this is the time set for Mr. Wheeler's first appearance and a change of plea.  We're ready to proceed.

THE COURT:  Thank you.

I want to note for the record I had the opportunity to meet with counsel and Mr. Wheeler before court this morning, simply to review the process so that Mr. Wheeler was clear about all the issues we had to address and to accomplish.  This is, in effect, a combined hearing that would collapse into one proceeding what might have happened over two or three.  It will be the arraignment on an information, a waiver of indictment review, a guilty plea after a full plea colloquy, pursuant to terms of a plea agreement.

So let me start first, Mr. McDonald, confirming that you've had a chance to review with Mr. Wheeler the many documents we discussed in chambers.  I think there are five in

number that required his signature.

MR. McDONALD:  Yes, Your Honor.

For the record, David McDonald, Bar No. 862430, appearing on behalf of Mr. Wheeler.  He appears out of custody.

The Court's rendition of what occurred earlier is correct.  I have gone over all these documents with Mr. Wheeler, the most recent this morning.  I read them all. He had a copy of them as I read them to him, and read along with me.  He signed them in my presence.

THE COURT:  All right.  So the first step, Mr. Wheeler, is to address the fact that we're proceeding with a charge on a document called the United States information. It sets forth certain charges against you.

As I explained when we were conferring informally, normally the prosecutor is required to go to a grand jury and get a grand jury's approval before charging a person with a felony crime.  This document, waiver of indictment, is for Ms. Kerin and me, the Court, to get your permission to skip that step, to then present you with the charge in the information as if a grand jury had reviewed it.  So you're relieving the government of that step and you're giving me permission to go forward as described.  Do you understand that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And, sir, did you read and sign then this waiver of indictment document?

THE DEFENDANT:  Yes, I did.

THE COURT:  Now, one step when a charge is presented is that it normally is read in full in open court.  But you can waive the reading, meaning you don't want or need to have me read to you each of the charges, so long as you are sure you understand the charges and have read them yourself.

THE DEFENDANT:  Yes, I understand them and waive that.

THE COURT:  All right.  Go ahead and take a seat, then.

We'll turn now to the prosecutor, who is going to summarize, Mr. Wheeler, the key terms of the plea agreement you and she have reached through negotiation that you and your lawyer over time have had with her.  I want you to listen carefully.  At some point I'll be asking you whether you understand everything that is being represented that is part of the agreement, whether you've actually read all of these documents, understood them and that.  But along the way, as we go, if anybody says anything you think is wrong, incorrect, something you didn't expect, something that concerns you, you need to speak up right away so that it can be addressed.  I want to be sure what happens today is, in fact, something you're fully on board with.  All right?

THE DEFENDANT:  Understood.

THE COURT:  Go ahead, Counsel.

MS. KERIN:  Thank you, Your Honor.

This is the plea agreement dated April 10th, 2018. In paragraph 1, the defendant acknowledges that the plea agreement is only between himself and the United States Attorney's Office, and doesn't bind any other prosecuting authority, administrative or regulatory authority.

Paragraph 2 indicates that the defendant will plead guilty to both charges contained in the information.  Count 1 is a wire fraud, in violation of Title 18, U.S.C., 1343.  Count 2 relates to Title 26, U.S.C., Section 7201, for the tax year 2012.

Paragraph 3 advises the defendant of the statutory maximum sentences for each of this count -- each of these counts.  For Count 1, wire fraud, the statutory maximum is 20 years' imprisonment, a fine of up to $250,000, and three years of supervised release.

For Count 2, attempt to evade or defeat tax, the maximum penalty is five years of imprisonment, a fine of $250,000 or not greater than twice the gross gain or loss, plus three years of supervised release.

Paragraph 4 advises the defendant that the United States Attorney's Office agrees not to bring any additional charges known to it at the time of this agreement.

Count 5 provides the elements and the factual basis for Counts 1 and 2.  Since I'm going to go over those later,

would you like me to --

THE COURT:  That's fine.  You can defer on those.

MS. KERIN:  Count 6 provides that -- advises the defendant that the Court must first determine the applicable guideline range, and Count 7 indicates what the government believes the advisory guideline range would be, and before any adjustments, it outlines that the resulting offense level would be a 32.

This is not in the agreement, but for the Court's information, the government believes that following all of the applicable downward departures, that the resulting guideline range would be 25, and if the defendant's criminal history is category 1 -- which we believe it is, but don't know for sure at this juncture -- that the resulting guideline range would be 57 to 71 months.

The government agrees to recommend the low end of the applicable guideline range.

The defendant is permitted to take any position regarding the advisory guideline calculations or any position at sentencing, regardless of the Court's analysis of the guideline range.

Paragraph 8 indicates that the defendant must demonstrate to the Court acceptance of responsibility and -- and to the United States Attorney's Office, and if he does, he will receive a three-level reduction in his offense level.  It

also advises that the United States Attorney's Office reserves the right to change the recommendation if the defendant between plea and sentencing does acts that are inconsistent with this acceptance of responsibility.

Paragraph 10 indicates that the United States Attorney's Office won't seek any upward departures, and while paragraph 8 says that defendant won't take any downward departures except as otherwise provided in this agreement, and as I've indicated, the agreement provides that the defendant can take any position at sentencing.

Paragraph 11 advises the defendant that he waives his appeal except in very limited circumstances.  The first is that the sentence imposed by this Court exceeds the statutory maximum.  The second is that the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of guidelines chapters 4 or 5K.  And then the third instance in which the defendant's waiver does not apply is if the Court exercises its discretion under 18 U.S.C. Section 3553(a) to impose a sentence which exceeds the advisory guideline range as determined by the Court.

Paragraph 12 indicates that regardless of the parties' recommendations to it for sentencing, and regardless of the guideline range, that you are not bound by those or of the writer of the presentence report, and that you can make any determination about sentencing, and whatever your determination

is, the defendant cannot withdraw his guilty plea or rescind the plea agreement if you do not follow our recommendations or the plea agreement.

Paragraph 13 advises the defendant that the United States Attorney's Office will provide full information to the presentence writer so that they may prepare a properly written presentence report.

Paragraph 14 advises the defendant that if he breaches the terms of this agreement or commits a new criminal offense between signing this agreement and sentencing, the United States Attorney's Office is relieved of any of its obligations under this agreement but the defendant may not withdraw any guilty plea.

Paragraph 15 contains numerous provisions relating to restitution, the defendant's obligations to provide information to the United States Attorney's Office regarding his financial situation, as well as any change in his financial situation. In addition, paragraph 15 advises the defendant that he will be responsible for restitution, and that for both counts in the information, and that with respect to Count 1, which is the wire fraud count, the amount of restitution may be up to $4.5 million, and with respect to Count 2, that number will be determined by the Court.  Again, that's the tax charge.

In addition to the defendant's obligation to pay restitution on Count 2, this provision lists numerous other

requirements by the defendant to engage with the Internal Revenue Service to determine civil penalties, as well as other taxes that may be due for tax years not charged in this indictment.

Paragraph 16 advises the defendant that the government will seek forfeiture as well.

And No. 17 admonishes the defendant that he agrees to a special condition of probation or supervised release requiring him to file tax returns as required, and to pay all taxes due and owing.

Paragraph 18 advises the defendant that there are no additional promises except for those contained in the plea agreement.

THE COURT:  And the other documents that are at issue today, all the materials that have been signed and reviewed by the defendant?

MS. KERIN:  Absolutely, Your Honor.

THE COURT:  All right.

All right.  Mr. McDonald, do you have anything you want to add to that before I speak with Mr. Wheeler more thoroughly?

MR. McDONALD:  I believe that Ms. Kerin accurately set forth the agreement.  I want to make clear, which she did, there's a little inconsistency between paragraphs -- I think it's 7 and 10, but we are allowed to ask the Court for

additional departures under 3553(a).

THE COURT:  There is no limit on --

MR. McDONALD:  How low we can go or --

THE COURT:  -- on the defendant's advocacy for a reasonable sentence.  Anything that exists in fact and law that supports a reasonable sentence in the Court's exercise of discretion is available to the defendant to seek, but there are no guarantees what the outcome will be.

MR. McDONALD:  As always.  Thank you, Your Honor.

THE COURT:  So, Mr. Wheeler, we have a lot of information to review.  I'm going to allow you to stay seated, except I first need to place you under oath, and I would like you to stand for that, and then at the end, when we go through the formal entry of plea, I'd like you to stand again.  But otherwise I think it will just be easier for you to be seated to access all the documents and go through this process.  All right?

THE DEFENDANT:  Okay.

THE COURT:  Please raise your right hand.

(The defendant is duly sworn by the Court.)

THE COURT:  Thank you.

Go ahead and take a seat.  Let's begin by you telling me your full name, please.

THE DEFENDANT:  Nathan Eldred Wheeler.

THE COURT:  And are you the Nathan Wheeler named as

the defendant in this case?

THE DEFENDANT:  Yes, I am.

THE COURT:  The papers say you're 42 years old, you've got four years of college, and I take it from the other papers you're also a certified public accountant by training?

THE DEFENDANT:  Yes.

THE COURT:  All right.  I want to focus on the information document for a minute -- that's the charging document -- because everything we talked about today involves your potential plea of guilty to Counts 1 and 2 to that information.  You've previously waived its reading.  I want to just be double sure that you've actually read this document completely and understand it all.  Do you?

THE DEFENDANT:  Yes, I did.

THE COURT:  All right.  And in that nine-page letter that Ms. Kerin wrote to Mr. McDonald, on page 2 of that agreement, beginning on page 2, and then almost all of page 3, those two particular charges are referenced.  And the reason I'm highlighting them right now is this document says, "The parties agree that in order for the defendant to be found guilty, the government must prove the following elements beyond a reasonable doubt."

So I want to start there with an important legal premise.  When the government charges an individual with a crime, yes, as happened here, with the presentment of the

charge to you now formally, we start with you being presumed innocent of any wrongdoing.  You're like any other person accused but presumed to be innocent.  There are only two ways to lose that protection.  One is if you voluntarily plead guilty, then you will give up that protection.  But if you changed your mind, the only other way that presumption of innocence could be lost is if after a public trial by jury -- which would be the accused's right -- the government succeeded in proving the person guilty beyond a reasonable doubt.  To do that, the government has to prove every single one of the material elements of the charge.  That's why this matters, the way this is written out, meaning every single one of the 12 jurors at trial would have to agree at trial that each element was true beyond a reasonable doubt, the highest standard of proof that we have, or you couldn't be found guilty in that trial.  Put another way, if one juror didn't believe the proof was enough on one element, you couldn't be found guilty in that trial.  It doesn't mean you're not guilty, it just means you're not found guilty, and that can complicate it.

          With that in mind, I want to review with you again pages 2 and 3 of this letter, because it says what the elements are for Count 1, wire fraud, and then it says you admit the elements of the offenses alleged in Count 1, and that the government could prove the following beyond a reasonable doubt at trial.  And then it sets out certain factual matter that

this document says you're admitting.  That means I could take as true.

And then on the next page similarly there are elements, and then an articulated admission by you of the elements and the proof.

So focusing on those two pages in particular, are you satisfied those set out accurately the facts?

THE DEFENDANT:  Yes, they do.

THE COURT:  And do you understand this function of elements of a crime and the government's burden of proving all of them beyond a reasonable doubt?

THE DEFENDANT:  Yes, I do.

THE COURT:  Let me finish, since I've started with your rights, so that I don't forget to cover them all as we go through all of these materials.

So the government brings the charge, the person is accused but presumed innocent.  I've told you if you go forward today and plead guilty, you'll lose that protection.  Of course, that's your choice.  If you changed your mind, then the only other way the government could succeed in obtaining a conviction or overcoming that presumption of innocence is if after a public trial by jury, a jury agreed that all elements were true beyond a reasonable doubt, and each charge would be viewed separately.  You have a right to that trial and the government has a right to present its evidence.  You have a

right to confront your accuser, to challenge the evidence against you, and meaningfully that's done with the government meeting its obligation to provide discovery, to disclose who the witnesses are, what the evidence would be that they're going to offer, and then in front of the jury, you would have the opportunity to challenge the witnesses.  Are they biased? Are they being untruthful?  Are they just wrong in terms of being inaccurate?  Does one witness have an axe to grind or is another witness getting something out of saying whatever the witness says?  These are all things that are often considered by the lawyer, competent -- like Mr. McDonald is -- in challenging witnesses against a client.  So his job would be to try to point out by cross-examining the government's witnesses why the jury might find doubt, reasonable doubt.

While all that is going on, you're still presumed innocent.  You don't have to prove you're innocent because that's the presumption, but if you wanted to call your witnesses, you have the right to do that, and if they wouldn't come willingly, you'd have access to this Court's authority to compel them, to make them come and testify and answer questions you ask, unless those questions called for them to give up information that would otherwise be privileged.  Nobody can be made to incriminate himself or herself.

Also, while being presumed innocent and having no burden to prove you're innocent, you have the right to remain

silent.  No one could make you testify in a trial.  On the other hand, though, you could choose to testify.  That's your personal right.  Even if Mr. McDonald thought that was tragically unwise for whatever reason, in the end it's your right, and if you want to take the witness stand, you could.  Of course, then you'd be subject to cross-examination.  Just like the government's witnesses are by your side, the government's lawyer could then challenge the reliability of what you're saying in front of the jury.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Now, all the rights we've just covered are ones you're giving up today if you plead guilty.  There won't be a trial.  I'll find you guilty.  You'll have lost any chance, however small that might be, that a jury would find you not guilty.  Do you understand?

THE DEFENDANT:  Yes, I do.

THE COURT:  You have one remaining constitutional right that you keep, and that's the right of the continued and effective assistance of counsel.  Mr. McDonald will be with you all the way through, through what looks like it's going to be a contested sentencing hearing, all the way through until the sentencing decision is made.  Do you understand?

THE DEFENDANT:  Yes, I do.

THE COURT:  Now, I gather from what was said to me when we met off the record, you've been working with counsel

for some years around these issues.  Is that right?

THE DEFENDANT:  Yes, that's correct.

THE COURT:  And how long has Mr. McDonald been representing you?

THE DEFENDANT:  Six months.

THE COURT:  Okay.  And before that, about how long did you have counsel?

THE DEFENDANT:  It was David Angeli, and I believe about two and a half years maybe.

THE COURT:  Through all of that time, up to now, do you believe you've had enough time to get the advice of counsel about all of these issues that are being presented?

THE DEFENDANT:  Yes, I do.

THE COURT:  And in particular, with respect to Mr. McDonald, who is relatively new on the scene, have you asked him all the questions you wanted to ask?

THE DEFENDANT:  I believe so, yes.

THE COURT:  Has he answered them?

THE DEFENDANT:  Yes, he has.

THE COURT:  Have you reviewed with him the fundamental question whether you should plead guilty or whether you should take your chances and go to trial?

THE DEFENDANT:  Yes, I have.

THE COURT:  And have you asked him all the questions you wanted to ask on that end?

THE DEFENDANT:  Yes.  Yes, I have.

THE COURT:  Are you satisfied with his advice and services?

THE DEFENDANT:  Yes, I am.

THE COURT:  And even knowing that you don't know what the actual evidence is on the amount of loss question that's going to drive some important sentencing issues, even though that's still to come, do you feel you've had adequate access to the record, to the information and all of that, to come to an informed decision yourself?

THE DEFENDANT:  Yes.  Yes, I do.

THE COURT:  Do you personally believe that pleading guilty on the terms negotiated is, in the end, something in your own best interest?

THE DEFENDANT:  Yes, I do.

THE COURT:  You're satisfied with Mr. McDonald's advice and services?

THE DEFENDANT:  Yes, I am.

THE COURT:  We've talked about the rights you have that you're giving up, and now I want to talk a little more about agreements you've made with the government.  As I explained in chambers, I'm not allowed to negotiate with a person who is pleading guilty, and I'm not allowed to negotiate with the government to suggest I'll do this if you do that.  That's just not permitted.  And so I want to underscore the

point counsel made at the beginning:  The deal you have is with her and the United States Attorney's Office and not with the Court.  Do you understand?

THE DEFENDANT:  Yes, I do.

THE COURT:  And while I take very seriously the duty I have to make a reasonable sentencing decision in every case, I can't promise you today what that is going to be, and that necessarily means you will be pleading guilty without knowing what's going to happen at a sentencing hearing and what decision I will ultimately make about a sentence.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And in particular, that means you can't take back your guilty plea if you disagree with the sentencing decision I make.

THE DEFENDANT:  Understood.

THE COURT:  So we talked about sentencing guidelines. This book that's about two inches thick is the guideline book. In your plea agreement documents, there's an analysis of the guideline application in a nine-page document.  I saw it on --

MS. KERIN:  Page 4, Your Honor.

THE COURT:  Thank you.  Page 4.

And you'll see the base offense level is described as 7.  That's really not controversial.

The next issue is that 18 levels are potentially

added if amount of loss gets as high as $3,500,000, up to $9,000,500.  If it's in that range, 18 levels are added to base level 7.  That's a big hit.

And I understand there is no agreement what that number is, but the reason I'm focusing on it right now is I want to try to cast sort of a worst-case guideline scenario. If the government is right and these are the numbers that ultimately get applied for your guidelines purposes, this totals 32, a base offense level of 32.  Normally a person pleading guilty gets three levels off for acceptance of responsibility, so it will move that 32 to 29 for purposes of our discussion.  Assuming you're in criminal history category 1, the lowest -- which I'm just assuming -- that guideline starting range is 87 to 108 months.  So that's obviously very, very significant as a point that the Court would have to take into account.

Now, there are going to be a number of factors I'll have to consider after calculating the guidelines correctly, but assuming the government was right, just for sake of our discussion, we'd be at that range of 87 to 108 months before any other downward or upward adjustments.  I have the authority to adjust downward based on a number of factors, but in the end the sentence has to be reasonable enough but not too much, taking into account the guideline range, never more than the maximum, but it has to be enough to punish a person for

criminal conduct, to promote respect for the law that was violated, to discourage you from repeating the conduct in the future, to discourage others from doing it in the first place if they know what happens when one does this criminal activity. The judge has to take into account the interests of the community, a law-abiding community not being compromised, and then those factors have to be considered in light of who the person being sentenced is, your personal history and characteristics, the good in your background -- that's one way to look at it -- apart from this situation.

THE DEFENDANT:  Right.

THE COURT:  So that judgment is exercised by the Court to decide what's enough for you, what would be too much for you, given the whole package.  Do you understand?

THE DEFENDANT:  Understood.

THE COURT:  And so while we may have a basis to be concerned that we're starting at a guideline range of several years in prison, that's again a factor, not the end factor, and you're free to argue, as has been emphasized, for any reasonable sentence, and I'm required to consider any reasonable sentence, just like if the government has a reasonable argument, too.  Is that clear?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Has anything been going on with you physically, mentally, emotionally, anything at all that

could be interfering with your ability to think or to make a good decision today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you on medication or under treatment of any kind at all?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Other than what's written down in -- I think we counted now five different documents you've signed. Other than that, and what's been said on the record here, has anyone promised you anything in exchange for your guilty pleas?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone put any pressure on you to plead guilty when you do not want to?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Do you have any pending criminal cases anywhere, any -- are you under parole, probation, supervision in another court for anything else?

THE DEFENDANT:  No, Your Honor.

THE COURT:  The reason I'm asking is in a minute I'm going to ask you questions that will lead to your guilty plea, and the first condition of a person being on any kind of court supervision is obey the law.  So if you had an open probation, say, in Washington somewhere, and you tell me today you've committed a crime, you might be exposing yourself to some sanction by another judge that I can't control.  That's why I

raised that.  Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  With respect to the possible penalties, they're laid out both in your agreement documents and in the plea petition.  Do you understand those prison maximums are just that, the maximum any judge could impose for this class of crime anywhere in the federal system?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition to the risk of a prison sentence, there's a required $100 statutory assessment.  It goes with every felony conviction.  You plead to two, that means you're going to have to pay $200.  And then there's this restitution issue, which as described, is very large exposure.  Again, if those numbers are disputed, there will be an opportunity for a contested hearing, and the Court ultimately will make factual decisions about what is or isn't part of a restitution obligation.  But the important word to keep in mind regarding restitution is it's mandatory.  A judge does not have discretion to say, "No, I'm not going to impose restitution," because it's mandatory.  If a crime committed by a person caused a financial loss that is discernible under all the rules, the judge has to impose restitution.

Your ability to pay is separate from that.  You will be required to pay to the best of your ability.  If you deliberately refused to pay when you had the ability to pay,

there are sanctions for that, too, up to and including a finding of contempt of court. But if you are doing your best, based on the means available to you and following the directions of the Court or of the probation officer, then that's the way it will be. Do you understand?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Okay. Also with respect to penalties, if a prison sentence is imposed, it will be followed by what's called supervised release for a period of three years, and during that time you're subject to the Court's supervision. You're released from prison, on supervision, subject to the following conditions: Obey the law, report to a probation officer truthfully and regularly, pay restitution, have a job, those kind of things, and any other conditions the Court might set.

I don't know you, so I don't know what's in your background, but it's not unusual for me to be told at sentencing that a person has issues that require treatment: a mental health problem, a substance problem, a combination of both or other things. So those things can be part of supervision. I'm just required to let you know that's one of the consequences. You're on supervision and you're required to do something, and then you don't, there can be consequences there, including losing your freedom and going back into custody. That's the theoretical premise. Do you understand?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And a federal prison sentence is one that you literally will serve day for day.  If the sentence is more than one year -- 12 months and one day -- you get the opportunity to earn credit against it by good behavior.  It gets reduced.  Those are calculations done by a prison official not a judge.  Other than that, you literally do the time that is imposed.  Understood?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  So I want to look at paragraph 24 of the petition to plead guilty.  It's on page 6 of that document at the bottom, and it runs over to page 7.  And it says at the bottom of page 6, "With respect to the charges to which I am pleading guilty, I represent that I did the following acts and that the following facts are true:  A, that in 2014, the exact date being unknown, within the District of Oregon, I did knowingly devise a scheme for obtaining money or property by means of a false or fraudulent pretense, representation, or promise that I would use the money for investment purposes and used for my personal benefit and transmitted or caused to be transmitted by means of a wire transfer currency in the amount of $486,000 from BH to CW Holdings for the purpose of executing the scheme."

Did I read that paragraph A accurately?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Is it true in all of its parts?

THE DEFENDANT:  Yes, it is, Your Honor.

THE COURT:  Do you know who BH is?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And then regarding paragraph B:  "On or about October 15, 2013, in the District of Oregon, I willfully attempted to evade income tax due and owing by me to the United States of America for the calendar year 2012 by preparing and signing a false and fraudulent tax return, Form 1040, which was submitted to the IRS, which reported that my taxable income for the calendar year 2012 was negative $214,184, with no tax due and owing to the U.S. and that the United States owed me a refund of more than $7,000."

Did I read that accurately?

THE DEFENDANT:  Yes, you did, Your Honor.

THE COURT:  Do you understand paragraph B in all its parts?

THE DEFENDANT:  Yes, I do.

THE COURT:  And is it true in each respect?

THE DEFENDANT:  Yes, it is, Your Honor.

THE COURT:  Is that your signature at the bottom of that page, indicating you read it and understood it?

THE DEFENDANT:  Yes, it is.

THE COURT: And is that a true statement with respect to all of these documents that we've been talking about, the five documents?

THE DEFENDANT: Yes, it is.

THE COURT: Okay. I'm going to stop at this point, Mr. Wheeler, and turn the floor back to Ms. Kerin. She'll make a formal recitation now, Mr. Wheeler, about the two charges again, focusing on the elements we reviewed from the plea agreement, and giving just a general statement of what she says the government's evidence is against you to support findings of guilt under these circumstances. If she says anything that concerns you, let Mr. McDonald or me know. Do not plead guilty with a reservation like that in your mind.

Assuming we get past that, then I'll ask you how you plead to those two charges. All right?

THE DEFENDANT: Yes.

MS. KERIN: Thank you, Your Honor.

With respect to Count 1, a violation of 18 U.S.C. 1343, the government would be required to submit evidence, admissible evidence to prove beyond a reasonable doubt the following elements: One, between 2011 and 2014, the defendant knowingly devised a material scheme or plan to obtain money or property by false representations or omissions of a material fact.

The second element is that the defendant knew that

the representations or omissions of material fact were false or misleading.

Three, that the representations or omissions were material, in that they would reasonably influence a person to part with money or property.

Four, that the defendant acted with the intent to defraud.

And finally, five, that the defendant used or caused to be used an interstate wire communication to carry out or attempt to carry out the material scheme to defraud.

If this matter went to trial with respect to Count 1, the government would introduce documents and testimony that would demonstrate that at all relevant times the defendant was a certified public accountant in the state of Oregon, and that he and others operated Bridge City Advisors, LLC.  Bridge City offered accounting, investment, and legal services to clients. From 2011 through 2014, defendant and others solicited money for various investments from clients of Bridge City and others. Defendant promised these investors that their money would be used for specific purposes, including to develop real estate projects.

As an inducement for the investment, the defendant promised clients and investors a return on the investment at a specific interest rate, and in some instances, interest payments over the term of the investment or a first priority

security interest in real property.  In fact, the clients' and investors' money was not used as promised and instead went for the defendant's direct personal benefit and other industries that he benefited from.

Bridge City clients and other investors were not provided with a perfected first priority security interest as promised.

From 2011 through 2014, the defendant also diverted client funds without client permission and/or outside of his legal authority to do so.  Defendant again used the funds to continue to build his other industries, to pay other clients and investors to whom the defendant owed money, or for his direct personal benefit.

Throughout this, defendant provided false statements of account, failed to provide accounting statements, prepared false documents or false information to clients about the use of their funds in order to continue to have access to these funds.

On or about April 10th, 2014, defendant, in furtherance of his scheme to defraud, did knowingly cause to be transmitted an interstate wire of money from the District of Oregon to Washington.  The amount was $486,000 to an account, CW Holdings, which is an entity controlled by the defendant. Defendant failed to use the wired funds as promised.

With respect to Count 2, attempt to evade or defeat

income tax, the government would have to prove beyond a reasonable doubt the following elements:  No. 1, that income tax was due and owing from defendant, in addition to that declared in his 2012 income tax return; No. 2, that the defendant took an affirmative attempt in any manner to evade or defeat income tax; and 3, that the defendant willfully attempted to evade and defeat the tax.

With respect to this count, if this matter went to trial, the government would introduce testimony and documents that would demonstrate that on approximately October 15th, 2016, the defendant filed an Internal Revenue Service Form 1040, a personal tax return for the tax year 2012.  Defendant knowingly and willfully prepared or caused to be prepared and signed a false tax return because he knew his taxable income for the calendar year 2012 was greater than the amount reported on the tax return.

Defendant listed negative $214,000 as his taxable income for the tax year 2012.  However, this was false because the defendant received and failed to report more than $680,000 in income from other sources, primarily from the scheme to defraud outlined in Count 1.  As a result, there was additional tax due and owing for that tax year.

THE COURT:  Thank you, Ms. Kerin.

Mr. McDonald, anything to add before I speak to Mr. Wheeler again?

MR. McDONALD:  Just that the government's rendition would cover the counts in the plea agreement.  It's sort of the breadth of it that we would be taking issue with, and part of that goes to the amount of loss.

THE COURT:  It's clear that's an issue.

MR. McDONALD:  I just wanted to make that clear.

THE COURT:  Yes.  I'm confirming the defendant has reserved the amount of loss to litigate at all -- in all respects going forward.

MR. McDONALD:  That's fine.  That's all I wanted to make sure of, Your Honor.

THE COURT:  Sure.

Mr. Wheeler, would you stand.

THE DEFENDANT:  (Complies.)

THE COURT:  Did you understand the prosecutor's summary?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And again we've got two charges here in the information.  Do you need me to read them back to you or not?

THE DEFENDANT:  No, Your Honor.

THE COURT:  To the charge in Count 1, the wire fraud charge, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  And the charge in Count 2, attempt to

evade or to defeat tax, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  Ms. Kerin, are you satisfied that the factual basis set out in the plea petition and the plea agreement documents are sufficient to support a finding of guilt?

MS. KERIN:  Yes, Your Honor, I am.

THE COURT:  As am I.  I'm satisfied Mr. Wheeler is fully competent today.  He is making a knowing, intelligent, and voluntary waiver of his rights, including his right to grand jury indictment as otherwise specified here.  I find also that his plea of guilty to the two counts in the information is knowing, intelligent, and voluntary.  There is a factual basis for a finding of guilt on each of those two counts I'm now making beyond any reasonable doubt.

I'm ordering a presentence report and asking the clerk please reserve a date that we can review with the parties now in December, since I understand there will be a matter of discovery and dispute to resolve between now and then as to what the scope of sentencing issues will be.

THE CLERK:  December 12th at 10:00 a.m., Judge.

THE COURT:  Does that work?

MR. McDONALD:  Yes, Your Honor.

MS. KERIN:  That works for the government, Your Honor.  Thank you.

THE COURT: What I would like is for counsel to send me a simple joint email message November 12 -- so 30 days in advance -- alerting me to the extent to which you continue to have disputes that are going to require an evidentiary presentation. This is more of a time management alert to me. And give me a general idea of what those issues are so that I can prepare and if necessary schedule a conference with you to plan for that hearing. We'll reserve the day for now. If you need more than that, I assume you'll let me know. If you're going to need less, you can let me know, too. All right?

MS. KERIN: Absolutely, Your Honor.

THE COURT: Now, the final thing is since this is Mr. Wheeler's first appearance, he needs to be booked on the charges and then released, unless there's some reason I'm missing. I see the Pretrial Services report. They're recommending release.

Ms. Kerin, is there any issue there?

MS. KERIN: The government concurs with the Pretrial Services report.

We do have a couple additional conditions that I've ran past Mr. McDonald, and I believe we are in agreement of those.

THE COURT: And those are?

MS. KERIN: The first is that the defendant is required to maintain one checking and one savings account, a

traditional condition.

The other is that he will obtain consent from Pretrial Services before he engages directly or indirectly in any transaction of more than a thousand dollars.

THE COURT:  All right.

Mr. McFarland, will you see that those are added?

THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.  I did that right before we started, added those conditions.  I did the checking and savings account, not to open any new financial accounts or lines of credit without the prior approval of Pretrial, and have the one checking and savings.

THE COURT:  The one question I had, Mr. McDonald, had to do with an entry of contempt of court in Clackamas County in April of 2017, with unknown disposition.  Are you aware of what that was about?

THE DEFENDANT:  It was child and spousal support.

THE COURT:  You don't want to be in contempt of any court, sir, between now and sentencing.  I want to be sure that you understand the agreement you've reached requires you to act like you're accepting responsibility, so if issues like this arise, definitely let Mr. McDonald know so that any misunderstanding or problem can be averted.  It's really important that you stay in compliance and demonstrate by your behavior the acceptance of responsibility benefit you're seeking under the plea agreement.  If you've got any issues at

all, our release officers are reasonable, they'll help you through these things, but if a dispute arises, Mr. McDonald knows how to bring it back to court, too. So just don't put yourself at risk by shutting down a discussion over some dispute.

THE DEFENDANT: Understood, Your Honor.

MR. McDONALD: And I want to point out, he was not represented by counsel at that time. His representation by Mr. Angeli had ended and my employment had not begun.

THE COURT: I'm approving defendant's release after being booked.

Counsel, I'd like you to review with the clerk which documents you're taking back and which ones he will docket in CM/ECF, and then I think that's all for today.

MR. McDONALD: I want to clear up for the record, because I do believe that he does have to book and release today.

THE COURT: Yes.

MR. McDONALD: Because of the timing, what we're going to do, I'm going to take him to pretrial release first and then have him sign up. He does live in the state of Washington, so he will be monitored by the Western District from United States Pretrial Services, and then we'll move from there to the marshals for book and release.

THE COURT: That's fine. It just needs to happen.

MR. McDONALD:  I understand.  I just want to make it clear that --

THE COURT:  You're not going this minute.  I get that.  That's good.

Here are the materials.  Please confer with the clerk before you leave the room, and then I'll go get files for the next matter.

Yes, Mr. McFarland, I'll sign the order.  Thank you. And you can have the report back from the clerk, too.

(Proceedings concluded at 11:06 a.m.)

--o0o--


        I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                January 15, 2020
_____      _____
BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
Official Court Reporter